IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GAIL WEATHERBY,

      Plaintiff,

v.

                           CIVIL ACTION NO.
                           1:11-cv-04578-JEC

FULTON COUNTY SCHOOL
SYSTEM,

      Defendant.

## OPINION & ORDER

This case is before the Court on defendant's Motion for Leave to File Excess Pages [35] and Motion for Summary Judgment [36]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Leave [35] and Motion for Summary Judgment [36] should be **GRANTED**.

## BACKGROUND

This is an employment discrimination case arising under the Americans with Disabilities Act ("ADA"). Plaintiff is a teacher who worked for the Fulton County School District for approximately 34 years. (Weatherby Dep., attached to Def.'s Exs. [38] at Exs. 2-12.) She was terminated from the district in 2010 pursuant to a reduction-in-force ("RIF"). (*Id.* at 56-57 and Def.'s Exs. [38] at Ex. 13.)

During the last several years of her employment with the district, plaintiff worked at Roswell North Elementary School as an

English as a Second Language ("ESOL") teacher. (Def.'s Exs. [38] at Exs. 2-13.) In this position, plaintiff helped students who were not performing at grade level because they had not mastered the English language. (Huff Dep., attached to Def.'s Exs. [38] at Exs. 27-28.) She performed satisfactorily in this role. (*Id.* at 112.)

Unfortunately, a budget shortfall forced the school district to eliminate plaintiff's ESOL position in 2007. (*Id.* at 22 and Weatherby Dep. at 27.) Thereafter, plaintiff was reassigned to teach kindergarten. (Huff Dep. at 22 and Weatherby Dep. at 27.) Plaintiff told her principal Jerome Huff she was not well-suited to be a kindergarten teacher, and that she would prefer to teach an early intervention ("EIP") class that involved similar responsibilities as her old position. (Huff Dep. at 22 and Weatherby Dep. at Ex. 22.) Huff told plaintiff that no EIP positions were available, and that she should focus on being a good kindergarten teacher. (Huff Dep. at 22.)

Although plaintiff ultimately accepted her reassignment, she struggled in her new role as a kindergarten teacher. (Def.'s Exs. [38] at Exs. 17-21.) Between 2007 and 2010, plaintiff had several meetings with North Roswell administrators about how to improve her teaching and classroom management skills. (*Id.* at Exs. 19-21.) Administrators and colleagues who observed plaintiff's classroom advised her to be more organized in her lesson plans and better

2

target students according to their capabilities. (*Id.*) They also urged plaintiff to use more consistent discipline and to keep her classroom tidier. (*Id.* at Exs. 21-22.)

In early 2010, Huff sent plaintiff several "Letters of Concern" regarding her performance. (*Id.* at Ex. 22.) In the first letter, Huff summarized the steps he and his administrators had taken to improve plaintiff's performance, and he indicated that these steps had not resulted in satisfactory progress. (Def.'s Exs. [38] at Ex. 22.) In the second letter, Huff documented problems he observed during a recent visit to plaintiff's classroom and suggested that plaintiff work with another kindergarten teacher to improve. (*Id.*) The third letter repeated many of the same concerns and noted that plaintiff was not implementing the suggestions provided by the other kindergarten teacher and that she either could not or would not comply to make sure her classroom was conducive to learning. (*Id.* at Ex. 23.)

In addition to the above issues, at least two serious and potentially dangerous infractions were reported in plaintiff's file. On one occasion, an autistic child left plaintiff's classroom without plaintiff noticing. (*Id.*) On another occasion, plaintiff left several children alone in her classroom after she took the other children in the class to lunch. (*Id.*) As a result of all of these issues, plaintiff consistently received a "Needs Improvement" rating

in several key areas of her performance reviews. (Def.'s Exs. [38] at Ex. 23.) Understandably, more than one parent asked for their child to be removed from plaintiff's class. (*Id.* and Def.'s Exs. [39] at Ex. 3.)

Throughout this same time period, plaintiff suffered from various physical ailments that impacted her ability to perform certain tasks at work. Since at least 1999, plaintiff had severe allergies that limited the extent to which she could be outdoors. (Weatherby Dep. at 115.) A subsequent car accident left plaintiff unable to bend, lift or use the stairs. (Def.'s Exs. [38] at Ex. 30.) Plaintiff also took an extended leave of absence in mid-2008 to recover from hepatitis, a disease she believed she contracted from young children at the school. (Weatherby Dep. at 132.)

Huff was generally accommodating of plaintiff's conditions. He allowed plaintiff to stay indoors when her students went outside during recess and exempted her from bus and carpool duty at the end of the day so that she could avoid allergens and fumes. (Def.'s Statement of Material Facts ("DSMF") [37] at ¶ 5.) After the car accident, Huff moved plaintiff's classroom closer to the elevator and gave her an elevator key so that she would not have to take the stairs. (Huff Dep. at 13 and Weatherby Dep. at 67-68, 70, 74.) Huff also permitted plaintiff to take time off from work in mid-2008 to recover from hepatitis. (Weatherby Dep. at 132.)

4

That said, Huff did not accede to all of plaintiff's requests for accommodations. On one occasion, Huff instructed plaintiff to attend an outdoor "field day," although he permitted her to wear a mask to alleviate the effects of her allergies. (*Id.* at 166.) Plaintiff claims that she became ill as a result of attending this event. (Weatherby Aff. [48] at ¶ 9.) In late 2009, Huff also moved plaintiff's classroom farther away from the elevator. (Weatherby Dep. at 68.) Huff explained that the move was necessary because (1) the classroom by the elevator was large and another teacher needed the space and (2) plaintiff's new classroom was near other kindergarten teachers and Huff thought plaintiff would benefit from their guidance. (Huff Dep. at 35-36.) Finally, Huff did not permit plaintiff to take the elevator during fire drills because he believed state law required everyone to take the stairs in that situation. (*Id.* at 14.)

Around March 2010, Fulton County initiated a second round of budget cuts as a result of the financial crisis and decreasing tax revenues. (Def.'s Exs. [40] at Ex. 3.) Ultimately, the Fulton County Board of Education concluded that it needed to reduce the teacher workforce by approximately 475 teachers, 252 of whom would come from elementary schools. (Wade Dep., attached to Def.'s Exs. [39] at Ex. 1 and Def.'s Exs. 40 at Exs. 4, 6.) The Board decided that performance reviews would play a large role in determining which

teachers would be discharged.  (Wade Dep. at 19, 27.)  On April 16, 2010, the Board informed plaintiff that her contract for the upcoming school year would not be renewed as a result of the RIF.  (Def.'s Exs. [38] at Ex. 13 and Def.'s Exs. [40] at Ex. 12.)  A few weeks later, plaintiff resigned from her position.  (Def.'s Exs. [38] at Ex. 13.)  In her resignation letter, plaintiff stated that she had no choice but to resign due to the "unethical and unlawful treatment" she had received from Huff and other Fulton County employees.  (*Id.*)

Plaintiff subsequently filed an EEOC charge alleging that defendant discriminated against her on the basis of her race, age and disability.  (*Id.* at Ex. 15.)  The EEOC charge included numerous theories of unlawful discrimination.  (*Id.*)  It stated that plaintiff was denied reasonable accommodations for her disability and that she was exposed to a hostile work environment as a result of the critical comments that Huff made about plaintiff in front of her colleagues.  (*Id.*)  It also alleged that Huff's negative reviews of plaintiff were in retaliation for objections plaintiff made to Huff's removal of her disability accommodations.  (Def.'s Exs. [38] at Ex. 15.)

In early October 2011, plaintiff received a right-to-sue letter from the EEOC.  (Pl.'s Resp. [46] at 1-2.)  On December 30, 2011, she filed this action.  (Compl. [1].)  In her amended complaint, plaintiff asserts a federal claim for disability discrimination under

6

the ADA.[1]  (Am. Compl. [5].)  Plaintiff also asserts a state law claim based on her allegation that defendant miscalculated her service time and improperly withheld $12,000 from her retirement benefits.  (*Id.* at ¶¶ 38-46.)  Defendant moves for summary judgment on both claims. (Def.'s Mot. for Summ. J. [36].)

## DISCUSSION

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict on the issue for the nonmovant.  *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.  However, Federal Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which he will bear the burden of proof at trial.  *Celotex*

---

[1]   Although plaintiff alleged race discrimination in her EEOC charge, she did not include that claim in her amended complaint. (Am. Compl. [5].)  Plaintiff has also withdrawn a previously asserted age discrimination claim.  (Pl.'s Resp. [46] at 24.)

7

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Id*. at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion.  *Id*. at 323.  The movant is not required to negate his opponent's claim in order to meet this responsibility. Rather, the movant may discharge his burden by merely "'showing'-- that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case."  *Id*. at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324.

In deciding a motion for summary judgment, the court must view all evidence and draw any factual inferences in the light most favorable to the non[-]moving party.  *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).  But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (1986).  The requirement to avoid summary judgment is that there be no "*genuine* issue of *material* fact."  *Id*.

8

## II.  <u>TIMELINESS OF PLAINTIFF'S ADA CLAIM</u>

As a preliminary matter, defendant argues that plaintiff's discrimination claim is untimely. (Def.'s Br. in Supp. of Summ. J. ("Def.'s Br.") [36] at 33.)  A plaintiff has 90 days to file a lawsuit from the "giving" of a right-to-sue letter by the EEOC.  42 U.S.C. § 2000e-5(f)(1).  The EEOC issued plaintiff's right-to-sue letter on September 23, 2011. (*Id.*)  Adding three days for mailing, defendant contends that the 90-day period began to run on September 26, 2011 and expired on December 26, 2011. (*Id.*)  Plaintiff did not file her complaint until December 30, 2011. (Compl. [1].)  However, plaintiff argues that the complaint is timely because she did not receive the right-to-sue letter until October 3, 2011. (Pl.'s Resp. [46] at 1-2.)

Plaintiff is correct that the 90-day time period begins to run on the receipt of a right-to-sue letter, as opposed to its issuance. *Bryant v. United States Steel Corp.,* 428 Fed. App'x 895, 897 (11th Cir. 2011).  *See also Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005).  There is no bright line rule to determine when the letter is "received." *Kerr,* 427 F. 3d at 952.  As explained in *Kerr*:

> the 90-day limitations period is to be analyzed on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility . . . without conditioning a claimant's right to sue . . . on fortuitous circumstances or events beyond [her] control.

9

*Id.* (quoting *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1340 (11th Cir. 1999)).

Plaintiff has submitted the envelope containing the EEOC's letter as evidence that she received the letter on October 3, 2011. (Pl.'s Exs. [47] at 1-3.)  The envelope is date stamped 9/28/2011, and someone has scrawled "Rec'd 10/3/2011" on the front.  (*Id.*)  In an email to defense counsel, plaintiff's attorney represented that the envelope reflects his "receipt on October 3rd after unsuccessful attempts to deliver to my office."  (*Id.*)  A certified number from the postal service confirms that the letter was received on October 3, 2011 at 11:29 A.M.  (*Id.*)

The Court acknowledges the importance of providing employers with adequate notice as to when employees might bring discrimination claims against them.  But in this case the "Rec'd 10/3/2011" mark on the envelope in which the notice was sent, along with counsel's representation and the postal service number, confirm that the notice was received by plaintiff on October 3, 2011.  Because the complaint was filed within 90 days of its receipt, the claims asserted in the complaint are timely.

### III.  <u>MERITS OF PLAINTIFF'S ADA CLAIM</u>

Plaintiff's ADA claim arises under Title I of the Act, which prohibits discrimination against disabled individuals in regard to the terms, conditions and privileges of their employment.  *See* 42

10

U.S.C. § 12112(a) and *D'Angelo v. ConAgra Foods, Inc.,* 422 F.3d 1220, 1227 (11th Cir. 2005).   To prevail on her ADA claim, plaintiff ultimately must show that:  (1) she has a disability, (2) she is a "qualified individual" as defined by the ADA, and (3) defendant discriminated against her because of her disability.  *Carruthers v. BSA Adver., Inc.,* 357 F.3d 1213, 1215 (11th Cir. 2004).   In order to survive defendant's motion for summary judgment, plaintiff must present sufficient evidence to raise an issue of fact as to each of those elements.  *Anderson,* 477 U.S. at 247-48 .

Plaintiff acknowledges that there is no direct evidence of disability discrimination.  (Pl.'s Resp. [46] at 23.)  Her claim is thus best analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Wolfe v. Postmaster Gen.*, 488 Fed. App'x 465, 468 (11th Cir. 2012) ("[T]he Title VII burden-shifting framework applies to ADA claims . . . that rely on circumstantial evidence.").   Under that framework, plaintiff must first show a prima facie case of employment discrimination.  *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 (2003)(explaining the application of *McDonnell Douglas* in an ADA disparate treatment case). The burden then shifts to defendant to provide a legitimate, nondiscriminatory reason for its actions.  *Id.*  If defendant meets that burden, plaintiff has an opportunity to show that defendant's stated reason is pretext for a discriminatory motive.  *Id.*

11

The amended complaint includes several theories under which defendant may be liable for discrimination under the ADA. Plaintiff claims that defendant's employees harassed her, creating a hostile work environment. (Am. Compl. [5] at ¶¶ 27, 33.) She also alleges disparate treatment and retaliation, charging that defendant gave her negative evaluations and ultimately terminated her on account of her disability and in retaliation for voicing opposition to defendant's employment practices. (*Id.* at ¶¶ 24-26, 35-37.) Finally, plaintiff contends that in late 2009 and early 2010, Huff withdrew what had been reasonable accommodations for her disabilities. (*Id.* at ¶ 25.)

In her response brief, plaintiff clarifies that she no longer seeks recovery on all the grounds asserted in the amended complaint. Plaintiff expressly disavows her failure to accommodate claim. (Pl.'s Resp. [46] at 6.) In addition, she fails to respond to defendant's arguments concerning her hostile work environment and retaliation theories. The Court agrees with defendant that the evidence does not support either a hostile work environment or retaliation claim. *See generally Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)(explaining that a hostile work environment claim requires evidence of severe and pervasive harassment based on the plaintiff's protected status) and *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)(to succeed on a retaliation claim, the plaintiff must show some statutorily

12

protected expression and a causal connection between the expression and an adverse employment action).  The Court thus **GRANTS** defendant's motion for summary judgment to the extent that plaintiff seeks recovery on a failure to accommodate, hostile work environment or retaliation theory.  *See Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (Hunt, J.)(dismissing a claim that plaintiff failed to address in opposition to a summary judgment motion).  Plaintiff's remaining ground for recovery is that she received negative evaluations and was ultimately terminated as a result of her disability.  (Pl.'s Resp. [46] at 6.)

### A.   Prima Facie Case

To establish a prima facie case of disability discrimination, plaintiff must show that she was disabled and qualified for her job. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996). She also must present some evidence that supports an inference of discrimination against her based on her disability. *Id.* Defendant equivocates about whether plaintiff was disabled and plaintiff presents evidence to suggest that she meets the more liberal standards for disability under the 2008 amendments to the ADA. (Def.'s Br. [36] at 15, 27 and Pl.'s Resp. [46] at 6-10.)  The Court thus assumes for purposes of this motion that plaintiff was "disabled" at the time of her termination.

In addition, the Court agrees with plaintiff that she was

13

qualified for her position. Defendant's subjective reviews of plaintiff's performance are insufficient to show that she was unqualified. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005). Defendant does not argue that plaintiff lacked the credentials, experience or any other objective prerequisites for the position. (Def.'s Br. [36] at 15-16.) In fact, defendant apparently concedes that plaintiff would not have been terminated from the position absent the budget shortfall. (*Id.* at 12-13.) The only asserted reason for plaintiff's termination is a budget-driven RIF and an accompanying directive to achieve the RIF by terminating the employees with the worst performance reviews. (*Id.*)

That said, plaintiff must still present some evidence of discrimination to survive summary judgment. A plaintiff typically meets this burden by showing that a similarly situated employee outside her protected class was treated more favorably. *Hammons v. George C. Wallace State Cmty. Coll.*, 174 Fed. App'x 459, 462-63 (11th Cir. 2006). Plaintiff does not cite any comparator evidence or otherwise argue that she was treated less favorably than any non-disabled employee either generally or in the RIF.

The lack of a comparator is not fatal to plaintiff's claim. *Id.* at 463. But in its absence, plaintiff must come forward with some other evidence of discriminatory animus. *Id.* In her response, plaintiff points to her negative performance reviews and the

14

withdrawal of certain accommodations for her disability. (Pl.'s Resp. [46] at 10-19.) No doubt these experiences were negative for plaintiff, but that is only half of the equation. Plaintiff does not cite any evidence to suggest that the accommodations decision or the performance reviews were related in any way to her disability. Plaintiff concedes that the evidence does not support a failure to accommodate claim under the ADA. (*Id.* at 6.) With respect to her negative performance reviews, plaintiff supplies no basis upon which a reasonable juror could find that her assessors were untruthful in their evaluations, much less that the evaluations were the result of discrimination against plaintiff on the basis of her disability.

**B.   Legitimate, Nondiscriminatory Motive**

Even if plaintiff could show a prima facie case of discrimination, the remaining steps in the *McDonnell Douglas* warrant summary judgment. Defendant's stated rationale for discharging plaintiff is that: (1) budgetary concerns required elementary school teachers to be discharged, (2) teachers with poor performance reviews were selected to be among those discharged and (3) plaintiff had poor performance reviews. (Def.'s Br. [36] at 19.) This rationale meets defendant's burden under the second step of *McDonnell Douglas*. *See Vessels*, 408 F.3d at 769-70 (describing the burden as "exceedingly light") and *Chapman v. AI Transp.*, 229 F.3d 1012, 1034-35 (11th Cir. 2000)(a subjective evaluation may provide a legitimate,

15

nondiscriminatory basis for an adverse employment action, if there is a "clear and reasonably specific factual basis" for the opinion). Defendant has provided extensive documentation regarding the County's budgetary dilemma in the spring of 2010. (Def.'s Exs. [40] at Ex. 2.)  Given the Board's directive to provide the best education possible to Fulton County students, it is eminently reasonable that the RIF targeted teachers with poor performance reviews. (*Id.* at Ex. 3.)  It is undisputed that plaintiff fell into the "poor review" category. (Defs.' Exs. [38] at Ex. 22.)

### C.   Pretext

At this stage in the analysis, plaintiff must present "evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by [defendant] were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  Plaintiff can show pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  She has failed to do either.

As indicated above, there is no evidence to suggest that a discriminatory reason "more likely" motivated defendant than a fairly

16

administered, budget-driven RIF.  Plaintiff suggests that Huff's withdrawal of certain accommodations previously granted to her suggests pretext.  (Pl.'s Resp. [46] at 6, 18-19.)  These accommodations included: an elevator key and permission to take the elevator rather than the stairs, an exemption from outdoor activities such as bus duty and recess, and a classroom near the elevator. (*Id.*)  Although these accommodations were slightly modified, they were not entirely eliminated.  Plaintiff's classroom was relocated farther away from the elevator, but she was only required to take the stairs during fire drills.  (Huff Dep. at 14, 35-36.)  Huff asked plaintiff to attend a field day on one occasion, but he still exempted plaintiff from outdoor duties such as recess and bus duty that every other teacher was required to perform.  (*Id.* and Def.'s Exs. [38] at Ex. 22.)

Each of the above modifications was justified by a good faith explanation.  Although plaintiff was not regularly required to take the stairs, Huff believed that state law required everyone to take the stairs during fire drills.  (Huff Dep. at 14.)  Huff encouraged plaintiff to attend certain outdoor events such as the field day in order to improve her relationship with the children and their parents.  (*Id.* and Defs.' Exs. [38] at Ex. 22.)  Plaintiff acknowledges that she was allowed to wear a mask to protect her against allergies anytime she had to be outside.  (Weatherby Dep. at

AO 72A
(Rev.8/82)

166.)  Huff does not recall plaintiff's protesting her move to a new classroom, and by all accounts the new classroom was nicer than the old one.  (Huff Dep. at 35-36.)

If anything, Huff's willingness to accommodate plaintiff in the first instance and his commitment to continue accommodating her to the fullest extent possible negates any suggestion of discriminatory animus.  Plaintiff has provided only speculation that Huff's explanations for the revocation of certain privileges was insincere. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.").  Even assuming Huff's limited revocation of certain previously granted accommodations were motivated by some hostility toward plaintiff, she fails to show that the hostility was related to her disability.  *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 986 (11th Cir. 1989)("an admitted bias would not necessarily translate into discriminatory intent.").

Plaintiff also questions the credibility of defendant's explanation, claiming that her negative performance reviews were unjustified.  (Pl.'s Resp. [46] at 18-19.)  This claim is not borne out by the evidence.  At the time of her reassignment as a kindergarten teacher, plaintiff herself expressed doubt about her ability to be effective in that role.  (Def.'s Exs. [38] at Ex. 21.)

18

Following her reassignment, at least five different individuals who evaluated plaintiff's performance uniformly concluded that plaintiff's classroom was not conducive to learning. (Def.'s Exs. [38] at Exs. 22-23, [39] at Exs. 4-6, and [40] at Exs. 17-18.) These evaluators included plaintiff's superiors, colleagues and one subordinate. (*Id*.)

Several parents expressed similar concerns about plaintiff's performance. (Def.'s Exs. [38] at Ex. 22 and [39] at Ex. 3.) One parent told Huff that she was "not happy with her [daughter's] academic progress and her behavior" in plaintiff's class. (Def.'s Exs. [39] at Ex. 3.) Other parents asked that their children be removed from plaintiff's class. (Def.'s Exs. [38] at Ex. 22.) The number of plaintiff's negative reviews, and their consistency, demonstrate that even if some parts of these reviews were inaccurate, the errors were honest mistakes and not evidence of unlawful pretext.

Finally, plaintiff points out that her reviews until the 2009-10 school year had been satisfactory, whereas the flurry of negative reviews only arose when Huff sensed an RIF may be imminent. (Pl.'s Resp. [46] at 18-19.) Again, this argument is not borne out by the evidence in the record. According to plaintiff's own notes, Huff expressed dissatisfaction with her performance as a kindergarten teacher as early as September 2007. (Defs.' Exs. [38] at Ex. 21.) Plaintiff acknowledges that she was told during the 2007-08 school

19

year that she needed improvement. (*Id.*) Plaintiff's reviews from 1999, 2001 and 2008 also indicated a need for improvement in some areas. (*Id.* at Exs. 17-19.) While these reviews may be too attenuated to form the basis for her inclusion in the 2010 RIF, they contradict plaintiff's theory that all of her reviews prior to the 2009-10 school year were satisfactory.

Where an adverse employment action is purportedly based upon an employee's misconduct or poor performance, the relevant pretext inquiry "is not whether the employer's determination was correct, but whether it constitutes an 'honest explanation' for terminating the plaintiff's employment." *Lowry v. Regis Salons Corp.*, No. 1:05-cv-1970-WSD, 2006 WL 2583224, at *19 (N.D. Ga. Sept. 6, 2006)(Duffey, J.)(quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)). *See also Hawkins*, 883 F.2d at 980 (where an employee is fired based on a negative performance review, the pertinent question is whether the employer "honestly believed" the negative report to be true). Plaintiff challenges the accuracy of her performance reviews, but she does not present any evidence to support her theory that defendant's explanation for her negative reviews or her ultimate termination is pretextual. For this additional reason, plaintiff's ADA claim must fail.

20

IV.  **PLAINTIFF'S REMAINING STATE LAW CLAIM**

As all of plaintiff's federal claims have been removed from the case, 28 U.S.C. § 1367(c)(3) applies.  Pursuant to § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over pendant state claims if it has dismissed all of the claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  The Supreme Court has observed that:

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.  When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing th[ose claims] without prejudice.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted).  *See also Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1550 (11th Cir. 1992).

The Court concludes that dismissal of plaintiff's remaining state law claims is appropriate in this case because plaintiff's federal claims have been dismissed in the early stages of the litigation.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").  Accordingly, the Court **DISMISSES without prejudice** plaintiff's

21

remaining state law claims regarding her retirement benefits.  (Am. Compl. [5] at ¶¶ 38-46.)

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's defendant's Motion for Leave [35] and Motion for Summary Judgment [36].  Pursuant to this order, plaintiff's federal claims are **DISMISSED** and her state law claims are **DISMISSED without prejudice**. The clerk is directed to **CLOSE** this case.


SO ORDERED, this 22nd day of September, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

22